The next case on the calendar is the United States v. Jones. We are requesting that the court vacate the judgment in this case and rename the case to the District Court for reconsideration of his suppression motion. The question before the court is whether Mr. Jones was collaterally stopped from challenging the federal court for search and seizure of evidence because he could be guilty to unrelated charges in Tennessee State Court. We are challenging five state-issued warrants on the grounds that they lack particularity and were not based on probable cause. We are also challenging a federal warrant on the grounds that any evidence produced from that warrant was the fruits of improper state warrants. The District Court has adopted Mr. Jones's motion. It supports the evidence on the grounds that he was challenging the federal courts on the same evidence that supported his Tennessee sexual exploitation charges. First, the court also determined that there could be a conception of fraud in this case. We believe that the court committed an error of law in reaching these conclusions and the case needs to be renamed. The question therein argues, in a brief, that collateral stop applies because Tennessee was not an issue in Tennessee. There was a single charge in the indictment, and though we'll see in parts of the record that it said there were two charges, there was actually an indictment with just one single charge. It specified he possessed images of a minor. It was referring to a singular person of a minor. He admitted to possessing less than 15 images. He was found guilty of sexual exploitation of a minor. Well, even, counsel, if you could just maybe skip ahead a little bit. Even if he admitted factual guilt to the same objects in Tennessee, that's not really the question here, right? The question is whether he's collaterally stopped from challenging the Fourth Amendment validity of the warrants, right? Isn't that your argument? Yes. That's what we're arguing. Yes. We're arguing he can challenge these warrants, and we're arguing he's collaterally stopped from doing so. And am I correct? He didn't actually challenge any of the warrants in the Tennessee proceeding. No, he did not. He ordered to reach a degree of... He decided to plead guilty. Yes. Isn't that determinative for you on the collateral stop-all question? No, Your Honor. We think that this action follows... I think that was a softball. I think isn't it determinative in your favor? Oh, yes. So, yes, isn't it? Yes, Your Honor. So because it wasn't fully litigated, even assuming a collateral stop-all would otherwise apply in this context, it's not appropriate in this case. No. So then why isn't the government then going to say, and what's wrong with the argument, that their good faith reliance on these warrants is nevertheless permissible? Thank you for moving me on, Your Honor. I think when we look at good faith exceptions, while government law enforcement officers rely on the warrant, there are exceptions to this rule. And I think some of these exceptions apply here. An exception is when the magistrate judge abandons his judicial role. Another exception is when the warrant activator lacks an issue of probable cause. And if you look at what the warrants contain, the warrants contain an allegation from the complainant. The person was not a witness to the events. The person came up with an allegation. Now, we do know the name of the person who did that. We do know that the person was the mother of one of the victims. But we don't know how the complainant learned of this information. Well, that amounts to, it sounds like the pre-Illinois v. Gates test, the Agliar-Spinelli test, for how warrants should be prepared, said you need to spell out your basis of knowledge. And it was applied very formally by courts, that you really need to tell us how this person knew. But Illinois v. Gates said, look at all the circumstances. Is there a fair probability? Why isn't it reasonable to infer that someone, the mother of the alleged victim, we can infer that she got her information from her daughter? Well, we're making an assumption of how. It may not have taken much to. Is it an assumption or a reasonable inference? I mean, how else do you get the information from a child who allegedly has been exploited? I mean, most likely it would be the mother, right? Well, the officer could have, you know, we're talking about teenagers here, young teenagers, yeah. Probably not without the mother being present or a parent being present. Is it unreasonable for a police officer to rely on a mother's allegations in this context? We're not saying it had to be a large step. We're not saying that. What's the additional step? Well, maybe just hearing from the alleged victim. But isn't the trouble that when you suggest the police should have taken one small step in addition, we're not here to sit in review of whether there was probable cause around supporting the warrants. We're here to say once the police brought this to a judge and the judge approved it under Leon, there might not be probable cause, but we would still apply the good faith test. That's why you invoke the good faith test, because if there was probable cause, you wouldn't need the good faith rule of Leon. We're saying that there's a space of error surrounding the probable cause determination in which the magistrate was allowed to fall, and a police officer would still nevertheless be entitled to rely on it. So if this is so close to the line where, look, maybe you can infer, it seems reasonable to infer that if the mother came forward with all this information within a day of the events, who did she get all this from but the daughter, then it's reasonable to infer that the police officer would have thought the same. Well, this is why we look at Wagner and Canfield, and we have to look just a little bit more to progress, and that's what this Court has allowed in most cases. I think that's why this would address why these warrants wouldn't be enough under Leon. Can I just ask you, can I just draw your attention back to the collateral estoppel issue for just a moment? And I want to just ask you if you could help us on the merits. We have not clearly addressed collateral estoppel's application in the Fourth Amendment context. I took from your brief, and I completely agree with you, that there would be due process concerns with applying collateral estoppel principles to the element of the crime because we need the jury to find each of those elements at trial. But is there any reason that we should not join those circuits that have said that in the Fourth Amendment context, in an appropriate case where it's actually litigated, collateral estoppel principles can properly apply? I think if it's been litigated, we would get into another story. But here it was not litigated. My client can stay court-determined. There's no reason to look at it. He was more interested in coming to terms with his guilt in some way in regards to Tennessee state charges and working out a reasonable plea deal that would allow him to avoid probation so that he could then, once he was done with his prison sentence, go on with his life. I guess I'm asking a hypothetical question. If, in fact, he had fully litigated it, just make that assumption, would there still be reason that we should pause to apply collateral estoppel in this context? I think these issues should be fully litigated throughout just to allow for due process to take place. Okay. We'll hear from the government. Thank you, Your Honor. Good morning. May it please the Court. My name is Tiffany Lee, and I represent the United States. I guess I will turn to the good-faith argument first. With respect to good faith and the application of Leon here, as George and I have already pointed out, the point of Leon is to give that space. And here, we believe it's more than a close call because of the fact that the detective looks at it, and at least hints at it, spells out who, spells out the what, spells out the when, and maybe the where was not quite as precise, but there's certainly going to be where Mr. Jones would have given all of this, and the Supreme Court's dictate that we don't look at probable cause in a hyper-technical sense. The Jetson folks did what we want law enforcement to do. Provide an affidavit, go to a neutral magistrate, present the facts, and see whether or not a competent judge, in this case Judge Duggar, would sign off on the warrants, and Judge Duggar did. Accordingly, there's no evidence of bad faith. The detective folks relied on this erroneously when they did, when the Tennessee law enforcement did go out. What about the argument that they could have done one more step and talked to the victims? Well, when it was argued, actually, I believe the assistant responsible for the case did note that, I think, I believe the timer was that the detective folks actually had two sworn statements from the minor victims at that time. But I guess the question is, do we have enough here for probable cause? We do. Obviously, some judges may want more steps, other judges may want less steps. But the whole question is, we want law enforcement to go to a magistrate, present what they do, present the facts of their case before the magistrate, and we want magistrates to view these things objectively, with a detached eye, and evaluate whatever is put in front of them. And Leon is basically saying, for appellate courts, it's not their place to necessarily review in such great detail, or require so many steps or quick steps in order to undergo their job of reviewing warrants, unless there is evidence that this is a magistrate that's holding it in, or that law enforcement affirmatively misled the judge. Can I ask you to turn your attention to the collateral estoppel question? Yes. And let's just assume, for the sake of argument, it applies. As an initial matter, do you agree that if it applies, it would be a function of Tennessee law on collateral estoppel that would drive whether it applies? That's an interesting question. You know, because I viewed it in the lens of Greg, and Greg viewed it under the lens of New York state law, in terms of looking at the law of collateral estoppel. I think the answer is yes, because of the fact that the search, there's only one search here, so there's only one law enforcement action that we're looking at here. And, you know, I think both Magistrate Judge Feldman here and District Court Judge Wormer looked to Greg to kind of lay out how it worked. And I think they viewed Greg's language regarding foreclosure of the challenge as one of timing, although there were aspects of collateral estoppel with that. And actually, because Greg goes through Tollett, it goes through Nenna, and it goes through Perseus. My apologies for that typo. So we go through Tollett, and we know that we understand that the guilty plea does not waive these rights. What it does is it renders them constitutionally irrelevant. For purposes of the previous conviction, right? Correct. For purposes of the previous conviction, it renders it constitutionally irrelevant. The tricky part is in precise. When you're dealing with the subject matter of the second litigation, which is on law enforcement context, obviously, under those circumstances, you cannot say that the petitioner there had an opportunity to litigate the court-mandated challenge, because that person pled guilty to the possession of the drug addicts, or the manufacturing of the drug addicts. And Perseus was somewhat saying, listen, you know, nothing is necessarily determined as a result of that guilty plea. Where that kind of comes into play under the circumstances of Greg, in which this court kind of hinted at following along the trajectory, because in brief Greg, if the drug had been found around the same time of the metro car, the Greg court seemed to indicate that it would follow along the notions of estoppel and foreclosure, and say that any court-mandated challenge with respect to the possession of the drug would have kind of followed along that. Which I have to confess, I was, if we got to that point, I was going to ask you, I've read that language, that line on page 166 of Greg over and over again, and I still can't understand it. I know it's dicta. I know it's posing this hypothetical consideration that if the circumstances had been different then, so therefore it's dicta. But for the life of me, I don't understand how that conclusion follows from everything else that's been said in Greg. I think it follows because of the use of the word relevance in MENA, and then precise uses it too. But what it's saying is it renders irrelevant MENA definition of it. A guilty plea renders irrelevant any constitutional violation that's not logically inconsistent with the valid establishment of factual evidence. But let me ask you this then. I mean, you've seen this before, right? Defendant moves to suppress certain evidence. Defendant wins. The evidence is suppressed. Some other evidence comes up that conclusively proves their guilt, or for whatever reason. Let's say they decide that they're going to cooperate. They want to just nail down their liability. So even though all the evidence has been suppressed, they plead guilty anyway. I don't think we would say that even if there was a clear Fourth Amendment violation, that now the plea has somehow rendered that all irrelevant. We're just going to say that those are completely – they're two different issues, and one doesn't have an implication for the other, right? Pleading guilty doesn't necessarily imply that there's been no Fourth Amendment violation. And that is true. However, I think there are – again, it's a question of I think you go back to logically inconsistent with the violation. But that's what I mean. It's not necessarily logically inconsistent because I think we've all seen it, right? Cases where there is suppression, but the defendant pleads guilty anyway for other reasons. Maybe he pleads guilty to a lesser-included offense. You suppress the drugs, so the government drops a B1A conspiracy. The person pleads to a B1C thinking, well, maybe there's going to be other evidence, and I'm just going to cap my losses here. That's true. But you wouldn't say that because that drug seizure, of course, was the thing that would have underlay the B1C anyway, that now those are logically inconsistent. You can't plead guilty and have had a Fourth Amendment violation. Of course you can have both. And I see that, but there are – like I think I'm looking at it as a view of elements. So, for example, someone confesses to or admits to knowing possession of a firearm or illegal possession of a firearm. The fact that they are saying, my gun, my gun, my gun, later on we find out that gun was used in the murder prior to his – you know, prior to his conviction for possession of the – you know, illegal possession of his firearm. It's the same gun. He's already admitted that it's his gun. Well, but you would not be able to use the gun itself as evidence in the later murder if the gun itself was fruit of the – of, say, a Fourth Amendment violation. But you would be able to use his admission in the guilty plea against him as evidence, right? Because you would probably say that there's attenuation and it's not fruits. Or maybe you would have an argument. I don't know. But assume you can't say that it's fruits of the unlawful seizure. But the gun itself, which remains the fruits of the unlawful seizure, would stay out, right? You'd be stuck with putting into evidence his admission at the guilty plea but not having the gun that was the fruits. So I guess that's what I'm saying. Why isn't that different? There we see, like, a weird logical flip, too, though. I mean he's already admitted to possessing the gun. Why wouldn't we be able – so it's the flip the other way in terms of, you know, what was mentioned in Mannheim in terms of, you know, the guilty plea, you know, renders irrelevant those constitutional violations which are logically inconsistent with the admission of guilt. So that, I mean – But irrelevant for what purposes? It seems irrelevant for the earlier conviction but not irrelevant for all time, for any purposes. You know, couldn't you just bring a 1983 case later? Sure. Right? Say, you know what? Yeah, I committed the crime. Put me in jail. But you know what? You guys broke into my house. You broke down the door. You had no reason. You took the gun and I want damages under bivvies. So that's what Forsythe says, right? Forsythe said under those circumstances it's not a broken-bedroom challenge that we make because, again, that is – that fact of guilt is irrelevant to his legality of the search. His guilt in Forsythe's where he admitted to manufacturing drugs and, you know, they're saying it's irrelevant. Again, the key term is relevance for which purposes and, you know, under the evaluation of whether or not someone actually gives up their Fourth Amendment right or closes the Fourth Amendment right because it really doesn't matter anymore going forward after the admission of factual guilt on that particular element. But in the alternative, the good thing is the non-conception applies and the district court's decision in order should be approved. Thank you. Thank you. I will be briefly focused just on the first part of Ms. Lee's argument where she was addressing Judge Chu's question about one more step is necessary. The government pointed out that the officer did, in fact, have a statement from the victims. This probably would have corroborated the information in the warrant, and probably I would not be here making this argument at this time if that was the case. So here we do see the need for something more. It just wasn't done. And I think it just supports the need that while we need to go just a little bit further and corroborate these general allegations from secondhand sources, we can't just rely on having a name or a relationship. So something more needs to be done. Unless the panel has any more questions for me. Thank you. Thank you both, and we will take the matter under advisement.